LeRoy C. Jacox, PLAINTIFF IN ERROR, v. State of Nebraska, DEFENDANT IN ERROR.

48 N. W. 2d 390

Filed June 7, 1951. No. 33006.

*Heaton & Connors, Torgeson, Halcomb & O'Brien,* and *James Barrett,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

LeRoy C. Jacox, plaintiff in error and defendant, seeks exoneration from his conviction and sentence for violation of provisions of the Blue Sky Law.

The information consists of two counts, and makes these charges against the accused: (1) That he, on or about the 13th day of March 1947, the 19th day of August 1947, and the 8th day of May 1948, in Cheyenne County, Nebraska, unlawfully, willfully, and feloniously negotiated for the sale and transfer and sold and transferred to Cecil Warren securities, consisting of an interest in oil and gas leases on property in the State of Wyoming, not exempt from the provisions of the Blue Sky Law, and not authorized to be sold, disposed of, or transferred by the Department of Banking of the State of Nebraska; and (2) that he on or about the 13th day of March 1947, the 19th day of August 1947, and the 8th day of May 1948, in Cheyenne County, Nebraska, unlawfully, willfully, and feloniously negotiated for the sale and assignment and sold and assigned to Cecil Warren securities, consisting of an interest in oil and gas leases on property in the State of Wyoming, without having secured from the Department of Banking of Nebraska a permit to transact business as a broker, as required by the Blue Sky Law.

The plea of defendant to each count of the information was "not guilty." The jury found him guilty as charged in each count.

The first count alleged that the securities offered for sale by defendant and sold to Cecil Warren were not excepted from the provisions of the Blue Sky Law upon which the prosecution was based. The defendant offered and requested the court to give the jury an instruction containing the language of subsection (10) of section 81-312 of the act, and advising the jury that

the class of securities therein described were exempt from the provisions of the act, and that any transaction concerning them was not a violation of it. This was refused, and the charge of the court to the jury did not mention the subject. The defendant complains that this was error. The rule of criminal procedure decisive of this contention is that an information need not negative the exceptions of a statute which are not descriptive of the offense. Pandolfo v. State, 120 Neb. 616, 234 N. W. 483; Emery v. State, 138 Neb. 776, 295 N. W. 417. This was applied in the Pandolfo case to exemptions specified in the act under which this prosecution was had.

The offenses attributed to defendant are that he unlawfully on each of three separate and specific occasions negotiated for the sale and transfer and sold and assigned securities not authorized to be sold by the Department of Banking to Cecil Warren in Cheyenne County, Nebraska, in violation of the Blue Sky Law, and that at the time of each of the transactions he had not secured from the Department of Banking and did not have a permit to do business as a broker, as that act requires.

The first transaction relied upon by the State was on the 13th day of March 1947. It originated, was conducted, and wholly completed on that date within a period of not more than an hour and a half at the farm home of the purchaser. It concerned an offer to sell him an interest in oil and gas leases on land in Niobrara County, Wyoming, owned by the Blacktail Oil Development Company. He bought an undivided one percent interest in the leases in accordance with and under the terms of a written agreement, made a part of his written purchase contract, completed and delivered at the time of the transaction. It was provided in writing at that time what he bought, that the purchase price was fully paid, and that he thereby became and was the owner thereof. There was nothing unfinished to be done by anyone.

The information was filed in the district court for Cheyenne County, Nebraska, July 11, 1950, more than three years and three months after the transaction relied upon by the State as constituting the offenses charged against him and committed on or about March 13, 1947. The defendant relies upon the statute of limitations, which provides: "No person * * * shall be prosecuted for any felony * * * unless the indictment for the same shall be found by a grand jury within three years next after the offense shall have been done or committed, * * *." § 29-110, R. R. S. 1943. The defendant has the same right to the protection of this statute when prosecuted by information as he would have if prosecuted for the same offense upon indictment. § 29-1603, R. R. S. 1943. An indictment must be found or an information must be filed within the time designated by the above statute or any prosecution for an offense within its terms is barred. Colling v. State, 116 Neb. 308, 217 N. W. 87; Gragg v. State, 112 Neb. 732, 201 N. W. 338; State v. Robertson, 55 Neb. 41, 75 N. W. 37; Taylor v. O'Grady, 113 F. 2d 798; Annotation, 13 A. L. R. 1446. The violations of the provisions of the Blue Sky Law alleged in the information constitute felonies. § 81-333, R. R. S. 1943; § 29-102, R. R. S. 1943.

The general issue in a criminal case interposes the defense of the statute of limitations. The burden is on the State to prove all of the essential elements of the crime charged, including the fact it was committed within the time fixed by law. If it has expired before an information is filed by the State, a conviction for the offense alleged is not sustained by the evidence, is contrary to law, and may not be upheld. In Emery v. State, *supra*, it is said: "Statutes of limitation, as applied to criminal procedure, need not be specially pleaded and may be raised under a plea of not guilty." Boughn v. State, 44 Neb. 889, 62 N. W. 1094, states the reason for this rule: "The reason for this rule is that the general issue in a criminal prosecution is broader

than in a civil action and casts upon the state the burden of proving every element of the offense, including the fact that it was committed within the period of limitations." Hogoboom v. State, 120 Neb. 525, 234 N. W. 422, 79 A. L. R. 1171, says that: "It is to be remembered in this connection that the generally accepted rule is that statutes of limitation as applied to criminal procedure need not be pleaded, but may be taken advantage of on the general issue * * *. So, too, the construction of this statute is liberal to the defendant, * * * 'not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition and notification by the legislature of the fact that time, while it gradually wears out proofs of innocence, has assigned to it fixed and positive periods in which it destroys proofs of guilt'. 1 Wharton, Criminal Procedure (10th ed.) 415, sec. 367."

The difficult situation of the State in this case, substantially conceded by it, induces it to contend that the offenses as alleged against defendant, because of the transaction of March 13, 1947, were continuous crimes and that the transaction was not then completed and the offenses were not wholly committed until August 17, 1948. This contention is without support in either fact or law.

The Blacktail Oil Development Company was a voluntary unincorporated association from and after January 15, 1947, until it was incorporated as Blacktail Oil Company in 1948. The agreement which set forth and governed the rights of Cecil Warren as a purchaser of an interest in the oil and gas leases by virtue of the transaction of March 13, 1947, provided that Blacktail Oil Development Company, the voluntary association, should be "subject to incorporation under the laws of the State of Wyoming whenever such development results in commercial production and the membership deem such incorporation advisable." Cecil Warren purchased

an undivided one percent interest in the leases, paid the purchase price, and became the owner thereof on March 13, 1947. This, by the terms of the agreement, gave him a right to a one percent interest in any incorporation afterwards organized as the written agreement provided it might or might not be, depending upon the desire and act of the membership of the voluntary association. A corporation was formed a year or more later and a certificate of stock dated August 3, 1948, was issued to Cecil Warren as the agreement provided it should be done if a corporation was organized. These facts do not in any way militate against the conclusion that the transaction of March 13, 1947, was had and wholly completed on that date, and any violation of the Blue Sky Law because of that transaction constituted immediately a crime by virtue of the Blue Sky Law of Nebraska.

The principal authority cited and the only one discussed by the State on the subject of continuing crimes is State v. Way, 5 Neb. 283. The continuing offense charged therein was that defendant, a married man, did unlawfully keep a woman other than his wife and unlawfully and wantonly cohabited with her in a state of adultery for a period of about a year. The charge was substantially in the words of the statute. The offense was not a single act of improper relations, but cohabitation in a state of adultery for a period of time. The court appropriately said in the decision of that case that: "* * * this is a continued offense, and if it should be proved that he wantonly cohabited with the woman in a state of adultery, during any portion of this time, such proof would be sufficient to establish the crime * * *." The inapplicability of that decision to the case made by the record under review is obvious.

It is sometimes difficult to determine whether a statute is directed against a general course of conduct or whether it prohibits individual acts themselves considered in isolation. In such an instance, there are no

specific rules which solve the problem to a certainty, and the legislative intention must be gained from all intrinsic and extrinsic indications which the law permits and recognizes as helpful to correct interpretation. This case presents no such a situation. The basis of this prosecution is a statute which prohibits any attempt to sell, dispose of, or deal in securities, or to sell, dispose of, or deal in them unless their sale or disposition is authorized by the Department of Banking and unless the person negotiating for or conducting the transaction has a permit from the designated agency of the state. Any and every act contrary to the law is made a separate and distinct offense. The State claims by its information that defendant violated the law on three separate dates. These were separate offenses and none of them was a continuing crime. Neither was there any attempt made by the State to charge a continuing crime. May v. State, 153 Neb. 369, 44 N. W. 2d 636.

The court advised the jury that if they found from the evidence beyond a reasonable doubt that defendant on or about the 13th day of March 1947, or on or about the 19th day of August 1947, or on or about the 8th day of May 1948, in Cheyenne County, Nebraska, negotiated for the sale and transfer and sold and transferred securities consisting of an interest in oil and gas leases on property in Wyoming, which were not then authorized for sale by the Department of Banking of the state, to Cecil Warren, it must find the defendant guilty of the crime as charged in count 21 of the information. Likewise, if the jury found from the evidence beyond a reasonable doubt that defendant on or about any one of the dates negotiated for the sale and assignment and sold and assigned said securities to Cecil Warren, in that county, without having obtained and then having a permit to do business as a broker as the Blue Sky Law required, it must find the defendant guilty as charged in count 22 of the information. The jury was obedient to the instructions and returned a verdict of guilty as

charged in each count. The jury was permitted to and may have based its verdict entirely upon the evidence concerning the transaction of March 13, 1947. Any violation because of that transaction was barred by the statute. That it may have done so is not entirely speculation. That was the only transaction at which the defendant was present and in which he personally participated. Cecil Warren had no acquaintance with defendant before March 13, 1947, and no contact with defendant thereafter until all of the times stated in the information had passed. In any event it cannot be ascertained that the jury did not convict the defendant for crimes barred by the statute before the filing of the information. The charge of the court permitted a conviction of defendant for crimes contrary to law and the evidence. "A verdict of guilty in a criminal case that is contrary to the evidence will not be sustained." May v. State, *supra*.

The judgment of the district court should be, and is, reversed and the cause is remanded.

REVERSED AND REMANDED.